JAMES J. DAGON and MARY P. DAGON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dagon v. Commissioner
Docket No. 20643-82.
United States Tax Court
T.C. Memo 1984-138; 1984 Tax Ct. Memo LEXIS 537; 47 T.C.M. (CCH) 1326; T.C.M. (RIA) 84138; March 20, 1984. Jack M. Battaglia and Thomas M. DiPiazza, Jr., for the petitioners. Barry J. Finkelstein, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: *538 Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Sec. 6653(b) [1]
Year
Deficiency
Addition to Tax
1973
$2,286.16
$1,143.08
1974
1,646.23
823.12
1975
4,090.42
2,045.21
1976
6,358.80
3,179.40
The issues are (1) whether petitioners are liable for the additions to tax for fraud under section 6653(b), and (2) whether the statute of limitations bars the assessment of the deficiencies. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. Petitioners, James J. Dagon and Mary P. Dagon, resided in Hornell, New York, when the petition was filed herein. Petitioners were married in 1950 and have seven children. Mr. Dagon has worked at the Dagon Funeral Home (herein the funeral home) since he graduated from the Renauard School of Embalming in New York City in 1949. Mrs. Dagon was employed as a school nurse by the Hornell Central School District during the years in issue. *539 The funeral home was started by Mr. Dagon's grandfather in 1884 and was subsequently operated by his father until 1947. From 1947 until 1949, Mr. Dagon's mother operated the funeral home with the assistance of a state licensed manager. Although Mr. Dagon took charge of the funeral home in 1949, his mother remained involved in the business throughout the years in issue. Mr. Dagon personally maintained the books and records of the funeral home consisting of a national funeral register (herein the register), a cash receipts and disbursements journal (herein sometimes referred to as the journal), and a checking account at the Steuban Trust Company (herein the business checking account). Mr. Dagon maintained the register on a regular basis only because he believed it was necessary in order to retain his operating license. He kept a separate page in the register for each funeral and recorded on each page, among other information, the funeral charges, the amount billed, and the customer's payment record. When the funeral home received payments, Mr. Dagon entered the amount on the appropriate page in the register. Often Mr. Dagon or his mother would place the money under a rug *540 in Mr. Dagon's office before depositing the payments into the business checking account. When the deposits were finally made, Mr. Dagon recorded the amount, date, and name of the deceased on the check stubs. In addition, whenever a funeral expense was paid, Mr. Dagon recorded similar information on the check stubs pertaining to that expense. Since the check stubs contained a record of the funeral home's income and expenses, Mr. Dagon used them to prepare the funeral home's cash and disbursements journal. [2]
Petitioner's 1973 return was prepared by an attorney who used summary sheets Mr. Dagon prepared on the basis of the information contained in the journal. Petitioners' 1973 amended return and 1974 return were prepared by a certified public accountant who also used summary sheets prepared by Mr. Dagon. Both the attorney and the accountant knew that Mr. Dagon maintained the journal, the register, and check stubs, but never asked to see those records in order to verify the accuracy of petitioners' returns. Petitioners hired another accountant to prepare their 1975 and 1976 returns. Although this accountant used *541 the journal in connection with his preparation of the returns, he too failed to examine the register and check stubs even though he knew Mr. Dagon used the check stubs to prepare the journal. In 1977 Mr. Dagon was informed by a special agent of the Internal Revenue Service that he was being investigated for possible criminal violations of the Internal Revenue Code. The criminal investigation continued for approximately nine months during which time the special agent met with Mr. Dagon on several occasions. Mr. Dagon gave the special agent all of the funeral home's books and records, explained the procedures he followed in preparing those records, informed the special agent that he maintained a safe deposit box and allowed him to inspect it, and provided the special agent complete access to his personal banking records. Mr. Dagon never attempted to mislead or deceive the special agent during their meetings, nor did he alter or destroy any of the funeral home's records. In fact, respondent was able to determine the amount of petitioners' omitted income for each of the years in issue on the basis of the records Mr. Dagon gave to the special agent. On their returns for the years *542 in issue petitioners omitted gross receipts of the funeral home as follows: [3]
Year
Receipts Omitted
1973
$9,366.83
1974
2,788.19
1975
13,864.00
1976
20,380.92
The amount of gross receipts omitted each year fell into the following three categories: (1) the difference between the receipts recorded in the journal and the receipts reported on the tax returns; (2) the receipts deposited in the checking account but not recorded in the journal; and (3) the receipts which were neither deposited in the checking account nor recorded in the journal. [4] In his notice of deficiency, respondent determined that petitioners fraudulently understated their incomes for each of the years at issue. Petitioners concede that they understated their income, but deny that the understatements were due to fraud. *543 OPINION The first issue is whether petitioners are liable for additions to tax for fraud under section 6653(b). Section 6653(b) provides for a 50 percent addition to tax if any part of the underpayment of a tax required to be shown on a return is due to fraud. For purposes of section 6653(b), fraud is an intentional wrongdoing with the specific intent to evade a tax believed to be owed. , affd. ; , cert. denied . The existence of fraud is a question of fact to be determined from the entire record. . The burden of proof is on respondent to prove fraud by clear and convincing evidence.Sec. 7454(a); Rule 142(b). Because direct proof of fraudulent intent is seldom possible, respondent may show the requisite intent from the conduct of the taxpayer and the surrounding circumstances. However, fraud is never imputed or presumed and courts *544 should not sustain findings of fraud upon circumstances which at most create only suspicion. . In the instant case, respondent asserts that several factors establish by clear and convincing evidence that petitioners' returns for the years 1973, 1974, 1975, and 1976 were fraudulent. Specifically, respondent asserts that (1) petitioners made substantial omissions of income, (2) petitioners intentionally omitted income because they were faced with financial difficulties, and (3) Mr. Dagon misled the special agent during their meetings. For the following reasons, we hold that respondent has not met his burden of proving that any part of the underpayment during any of the years at issue was due to fraud. Substantial omissions of income alone are not enough to prove fraud. ; . Although petitioners omitted substantial amounts of income, we find these omissions resulted from Mr. Dagon's carelessness in keeping the funeral home's records rather than from any desire to evade taxes. In an effort *545 to show that the omissions were intentional, respondent asserts that petitioners were faced with financial difficulties during the years in issue. However, even if the record indicated that financial problems existed, and we are not sure that it does, there is no showing that petitioners were thereby motivated to omit income. Mr. Dagon clearly did not conceal any of the funeral home's records from his tax return preparers. Although his return preparers either used summary sheets or the journal, they were aware of the existence of all the other records. Moreover, we think it is significant that not only on the basis of these records was income omitted, but also deductions which petitioners were entitled to were not taken. We also find that during all of their meetings Mr. Dagon cooperated completely with the special agent. He gave the special agent the register, journal, and check stubs for all the years in issue and explained how each record was maintained. Mr. Dagon never altered or destroyed any records nor did he mislead or deceive the special agent. Based on the records he made available to the special agent, respondent was able to determine the amount of petitioners' omitted *546 income for all the years in issue. Thus, there has been no showing that Mr. Dagon ever intended to mislead the respondent. See . Finally, we do not find the presence of any of the typical hallmarks of fraud. There is no evidence of misrepresentation of facts, concealment, artifice, or device to hide income on the part of petitioners. Petitioners' transactions were out in the open and anyone could, without much effort, determine their income simply by analyzing the funeral home's records. Such circumstances do not indicate a willful effort to underreport income and evade tax. Thus, we conclude that respondent has not established by clear and convincing evidence that any part of petitioners' underpayment of taxes for the years in issue was due to fraud. Accordingly, we find that petitioners are not liable for the additions to tax for fraud under section 6653(b). The second issue is whether the statute of limitations bars the assessment of the deficiencies for the years in issue. Respondent argues that the statute of limitations is open because part of petitioners' underpayment of taxes for each of *547 the years in issue was due to fraud.Sec. 6501(c). Since we have found that no part of petitioners' underpayment was due to fraud, we find that the statute of limitations bars the assessment of the deficiencies for all of the years in issue because the notice of deficiency was mailed more than three years after petitioners' returns were filed. [5] Sec. 6501(a). To reflect the foregoing, Decision will be entered for petitioners.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The funeral home used the cash basis method of accounting.↩
3. The amounts of gross receipts reported on petitioners' tax returns for the years in issue were as follows: ↩
Year
Receipts Reported
1973
$73,822.54
1974
79,282.08
1975
88,655.33
1976
101,164.00
4. ↩
1973
1974
1975
1976
(1) The difference between
$685.03
$979.69
$280.00
$1.80
the receipts recorded in
the journal and the receipts
reported on the tax returns
(2) The receipts deposited
4,591.00
593.50
5,316.00
18.077.92
in the
checking account but not re-
corded in the journal
(3) The receipts which were
4,090.80
1,215.00
8,268.00
2,301.20
neither deposited in the
checking account nor re-
corded in the journal
Total Amount of
$9,366.83
$2,788.19
$13,864.00
$20,380.92
Receipts Omitted
5. We note that the six-year statute of limitations under sec. 6501(e)(1)(A) may have been applicable herein. However, since respondent, who has the burden of proving that petitioners omitted from gross income an amount in excess of 25 percent of the amounts stated, did not plead nor argue this on brief, we need not address it herein. See , affd. without discussion on the point .↩